UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 12-147(RLW) |
| | : | |
| v. | : | |
| | : | |
| KAYLAN JOSEPH CURETON | : | |
| Defendant. | : | |

### STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, Kaylan Joseph Cureton, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. Leading up to May 31, 2012, Metropolitan Police Department Detective Timothy Palchak had been acting in an undercover capacity as part of a multi-jurisdictional FBI/MPD Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, Detective Palchak ("UC") previously registered as a member and created an online profile on a predicated social network site which, based on the UC's experience and information gathered from other sources, is a site frequented by individuals that have a sexual interest in children, and incest.

2. On Thursday, May 24, 2012, at approximately 11:04 a.m., the UC observed a user on that predicated incest site post a message in the public forum of the incest chat room soliciting, "Any USA dads?" An individual, later identified as Kaylan Joseph Cureton ("defendant") responded to the message, "Va. here."

3. On Thursday, May 24, 2012, at approximately 11:16 a.m., the UC initiated a private instant message chat with the defendant within the predicated site. The UC wrote, "im in VA area into yng." The defendant responded, "cool you a dad[?]" The defendant described himself as a 25-year-old male from Richmond, Virginia with a 9-year-old step brother. The UC informed the defendant that he was a 41-year-old male with a 12-year-old daughter. The defendant responded, "nice do you play?" The UC informed the defendant that he was sexually active with his purported 12-year-old daughter.

4. The defendant stated that he has an interest in children ages 4-14 and stated that he was not sexually active with his brother because he is fearful that his brother would tell, but does "show off a bit' for his brother. The defendant asked the UC if he was bi-sexual and wrote, "i'd love to play with you two lick both of you." The UC informed the defendant that he would allow him to perform oral sex on the purported 12-year-old child. The defendant wrote, "I could come up if you wanted to play, im off Thursdays and Sundays." The UC stated, "im 100 serious if you are, not into fantasy here 100% real. The defendant responded, "yes same!"

5. On Thursday, May 24, 2012, at approximately 11:28 p.m. the UC and defendant exchanged Yahoo instant messenger screen names and began communicating on Yahoo. The defendant was using the screen name, joseph.ken90 on Yahoo. The defendant provided his cell phone number and wrote, "What's yours, god i['m] hard thinking about it." The defendant then requested to see photos of the UC and the purported 12-year-old child. The UC responded, "sure i have my pics on here can i send it here[?]" The defendant responded, "Ya. Does she like cum?"

6.     The UC sent the defendant a clothed photo of his purported daughter and the defendant responded, "Oh god. I so hot! You are so lucky." The defendant then wrote, "Damn I think we are going to have so much fun!" The defendant then wrote, "I have a whole thumb full of pthc vids but none on my phone."

7.     The UC also communicated with the defendant via text message on multiple dates between May 24, 2012 and May 31, 2012. On Thursday, May 24, 2012, at approximately 4:32 p.m. the defendant texted, "Hey this is kj cant wait to meet both of you!" The defendant asked, "Do you think she will go for it," and the UC responded, "Im pretty sure she will I had her suck a dildo while I wa[s] fucking h[e]r and told her how hot it would be if it wa[s] real." The defendant asked, "Ugh ya that would be amazing! Do you cum in her?" Later that night the UC texted, "Just left he[r] house she is cool for next week." The defendant responded, "!Awesome! I can't wait to lick her pretty little lips!" In that same text message conversation, the defendant wrote, "So do you want me to come up to your house? Or do you want to meet somewhere?" The UC and the defendant then engaged in a text message conversation about meeting in Washington, D.C. at approximately 4:30 p.m. on Thursday, May 31, 2012. After arranging the meeting, the defendant wrote, "I want to watch you fuck her! Do you want to play all three of us?" The UC responded, "Yes I do for sure," and the defendant wrote, "I'd love to 69 with her while you fuck her from behind! So I can lick your balls while you are in her. And she can suck on me too."

8.     On Tuesday, May 29, 2012, the UC and defendant reconnected via text message after the UC was purportedly out of town for the Memorial Day Weekend. At approximately 11:30 a.m. the defendant wrote, "I cannot wait to play! I've jacked off like three times thinking

about it!" The defendant then wrote, "I am kind of worried/nervous, how do I know that you're not a cop . . . Will you send one naked picture of her? It would make me feel better." The UC and the defendant then engaged in a detailed discussion via text to arrange a meeting on Thursday, May 31, 2012. The defendant writes that he would like to arrive before rush hour traffic and texts, "I'll be there by 4 at the latest! If it's too crazy I'll let you know. I'm so boned to suck and lick her sweet little pussy." The UC stated that he lives in Washington, D.C. and notes that he would provide an exact address on Thursday.

9. The UC also states that his daughter is "staying overnight on Thursday." The defendant writes, "Ok we can still meet in public first I would feel a lot safer then just coming over fuck im hard." The UC assures the defendant that they can meet at a restaurant before going to his apartment and the defendant writes, "Does she have any little fuzzy pubes yet?" The UC responds, "Light brown fine strands," and the defendant replies, "Mm cant wait to play with them."

10. On Wednesday, May 30, 2012, at approximately, 10:50 a.m. the defendant asked for a picture with both the UC and his daughter in the same photo and writes, "I just feel nervous cause I haven't seen both of you in the same picture . . . even with clothes on." The UC gives the defendant an opportunity to back out texting, "Im nervous too, if you don't want to do this, I totally understand I don't want to send anymore pics out till we meet I have the most to lose." The defendant responds, "Ok. I understand, I do want to do this totally but we are both going to be nervous until we meet and prove we are who we are. I'm so horny to play with your sweet little daughter and you! But its only natural to be cautious." The UC replies, "Totally understand. I will feel a lot better once we prove ourselves," and the defendant writes, "Me too cant wait to

touch your cock then go up and eat [the purported child's] pussy with u." The texting ended for the night at approximately 10:45 p.m. with the defendant writing, "God I can't wait to lick her little pussy and butt! I'm so fucking hard."

11.     On Thursday, May 31, 2012, at approximately 8:28 a.m., the UC wrote, "Fuck yeah I woke up hard as shit can't wait." The defendant then called the UC who did not answer the phone. The defendant then texted, "Answer." The UC wrote, "At work in meeting can I call you at 10?" The defendant then wrote, "Sure I just wanted to tell you that I am looking forward to today, but think I am going to pass on meeting your daughter. I would still be down to meet you in public and talk about this fantasy we have because for me that's all this is, a fantasy, that I would never act on. Call me at ten!" The UC responds, "Ok im more into real time but can still meet if you want." The defendant writes, "Ya give me a call."

12.     On May 31, 2012, at approximately 10:13 a.m, the UC called the defendant in a recorded one-party consent telephone call. The defendant almost immediately stated that his text about not actually wanting to meet the daughter was because he "just wanted to cover [his] bases with that text." The defendant then said, "But, I am looking forward to meeting up with you and seeing what happens." They discuss validating themselves prior to meeting the daughter. When the UC talks about having sex with the purported child after validation, the defendant agreed and stated with a laugh, "In case you are a cop, it's all a fantasy to me until proven otherwise." When the UC suggested that he could have his daughter walk by while they were outside a public location so that the defendant could see her, the defendant responded, "Right, exactly." The defendant then suggested that the 12-year-old child could come sit down with them at the table.

When the UC stated, "Ok, that way you can talk before we go up," the defendant, feeling more confident, stated, "That sounds awesome. If this is real that's fucking amazing."

13.     On May 31, 2012, at approximately 10:34 a.m., after the phone conversation, the UC provided his address in Washington, D.C., the defendant responded, "Feel a bit better after talking to you." At approximately, 2:37 p.m. the defendant texted, "Leaving now again I cannot wait to talk to you about this fantasy." Over the course of the next two hours the defendant texted about the traffic on his drive from Richmond, Virginia to Washington, D.C.

14.     On May 31, 2012, at approximately, 5:07 p.m., the UC and the defendant met at the agreed upon location. The UC had a brief conversation with the defendant during which the defendant introduced himself and sat down with the UC at an outdoor table. The UC stated that his daughter was leaving her mother's house in about ten minutes but that he was not comfortable with her sitting with them in public. The UC suggested that, after the validation, the three of them take a walk together before going up to the apartment. The defendant agreed. The defendant then got up from the table and walked toward the bathroom where the validation was to take place. The UC then gave a prearranged arrest signal and the defendant was arrested after a brief struggle. The defendant produced a Florida driver's license bearing the name Cureton, Kaylan Joseph.

15.     On June 4, 2012, law enforcement officers executed a search warrant on the Richmond residence where the defendant lived with his mother. Officers recovered the USB drive that the defendant had mentioned to the UC. That USB drive contains 40 unique videos including:

a. A prepubescent child of approximately 3 years being vaginally penetrated in a video titled 3y baby penetrated.

b. A prepubescent child of approximately 4 years being vaginally and anally penetrated in a video titled baby fuck anal vaginal 4 year old father.

c. A prepubescent child of approximately 6-7 years being vaginally penetrated.

d. A prepubescent child of approximately 7 years being anally penetrated in a video titled 7yo anally penetrated.

e. A prepubescent child of approximately 8 years of age being penetrated from behind. The child is wearing a black hood covering the face.

f. A prepubescent child of approximately 10 years of age being vaginally penetrated from behind. The child is crying and screaming as she is raped and the video is titled, "Ass fuck crying."

DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorney, David Bos, Esquire. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/8/12

Kaylan Joseph Cureton
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 8/08/12

David Bos, Esq.
Attorney for Kaylan Joseph Cureton